[Civ. No. 10527. First Appellate District, Division Two.—May 9, 1938.]

M. UCOVICH, Appellant, v. J. BASILE, Jr., Respondent.

J. Oscar Goldstein and Bohnett, Hill, Cottrell & Boccardo for Appellant.

Louis Oneal, Maurice J. Rankin and C. E. Luckhardt for Respondent.

STURTEVANT, J.—The plaintiff sued the defendant to recover a judgment in the sum of $5,000 as damages. The defendant answered and a trial was had before the trial court sitting with a jury. At the end of the plaintiff's case the defendant made a motion for a nonsuit. The motion was

granted. From the judgment of nonsuit the plaintiff appealed.

In pleading his case the plaintiff set forth his claim in two counts. In the first count he pleaded the facts; in the second count he set forth an ordinary count for conversion of personal property. In the first paragraph of the first count he alleged: "That on or about the 18th day of February, 1931, at San Jose, California, the plaintiff and defendant entered into a written agreement for the exchange of certain real property, by the terms of which plaintiff was to exchange certain real property belonging to him, situate in the county of Butte, state of California, for an undivided interest belonging to said defendant in certain real property situate in the county of Tehama, state of California. That plaintiff agreed, as part of said agreement of exchange, to assign and transfer to defendant certain farm equipment, drying-plant equipment including trays, and boxes, tractors, and ranch tools, when said defendant should pay to the bank holding deed of trust upon the said property of plaintiff in Butte county the sum of five thousand ($5000.00) dollars on account of the principal of said indebtedness to said bank, and said defendant then and there agreed to make said payment in the sum of five thousand ($5000.00) dollars to said bank in consideration of the transfer of said personal property to be made to him. That said agreement was, during the month of February, 1931, reduced to writing in three separate documents, a copy of each of said documents, marked respectively Exhibit 'A', Exhibit 'B' and Exhibit 'C', being hereto attached and made a part hereof, and that said documents were all made and delivered as part of the same transaction and to constitute the evidence of one agreement." Continuing, he alleged the neglect and refusal of the defendant to pay the bank $5,000 and that plaintiff was compelled to pay said sum; that defendant took possession of said personal property and still holds such possession; and that plaintiff has been damaged in the sum of $5,000, together with interest from February 28, 1931, at 7 per cent per annum.

Exhibit "A" in part is as follows: "M. Ucovich first party, hereby offers to convey by a good and valid grant deed to Jo. Basile Jr. Second party, the following real property owned by the first party in the county of Butte state of California, described as follows: The north half of the N. E.

Quarter (N-½ of N. E. ¼) Section 35 Township 18 North, Range 2 East. M. D. B. & M. 80 acres, more or less. Including all r̃ ṛch equipment, and dry plant equipment such as trays and boxes, 3 tractors, all implements and tools of every description on said ranch. Subject to the following encumbrances: $30,000—The sum of $5000.00 of this above $30,000 is now due. Subject to a reclamation and drainage tax of record which is not to exceed $3,200.00 and accept therefor a good and valid grant deed to the following property owned by the second party situate in the county of Tehama state of California, and described as follows: An undivided ½ interest in 8230 acres, more or less, located about 20 miles west of Red Bluff and known as the Pettijohn Ranch. Located in Township 26 N. R. 6 W. M. D. B. & M. Frank Temple of San Jose, California is the owner of the other undivided ½ interest in the above ranch.

"All mineral rights of every description reserved. Subject to the following encumbrances: $24,400 Additional Terms of Exchange: All interest, taxes and all expenses appertaining to either property, to be pro-rated at date of transfer. Also Insurance. . . . The parties hereto accept this above exchange and hereto set their hands.

"Dated: Feb. 18th, 1931.

"M. Ucovich

*"Acceptance*

"Joe Basile, Jr. second party, hereby accepts the foregoing offer and agrees to perform the terms and conditions thereof on his part and consents to the employment of ——————— as agent for both parties and agrees to pay to him commission of $——. Dated: Feb. 18, 1931.

Joseph Basile Jr."

The plaintiff does not claim that by virtue of any covenant contained in exhibit "A" the plaintiff agreed to execute a bill of sale nor that the defendant agreed to pay the bank any sum whatever. However, he earnestly contends that such matters appear when exhibits "B" and "C" are read in connection with exhibit "A". True it is that exhibit "A" contained a covenant to prorate interest, taxes, insurance, etc., but it did not provide for a written instrument on that subject. Nevertheless, after February 18, 1931, a prorate statement, exhibit "B", was written. In form that document is as follows: "Pro-rata statement as of February 28,

1931 covering Ucovich Ranch at Gridley, Calif. Undivided ½ interest in Basile Ranch near Red Bluff." (Then follow items of insurance, prorated, taxes prorated.) That document ends as follows: "Note: Have written to Sutter Butte Canal Company for bill on Ucovich property. Closing bills also should be gotten on light, power, telephone, etc. The above to be adjusted later. How about personal property taxes on Ucovich Ranch? Also rent due Joe on his ranch." It may be noted that said exhibit "B" contains nothing regarding a bill of sale to be executed by the plaintiff nor regarding the payment of $5,000 by the defendant. Exhibit "B" was not signed by either party. The plaintiff testified that an amended *pro rata* statement, exhibit "C", was executed and signed by both parties. He claims it was so executed the day the parties exchanged deeds. It was the earnest contention of the defendant that no such document was ever written or executed. However, as we are considering the ruling on a motion for a nonsuit we will accept the plaintiff's testimony. The title to exhibit "C" was, "Prorata statement as of February 28, 1931. Covering Ucovich Ranch at Gridley, Calif. an undivided ½ interest in Basile's ranch near Red Bluff, Calif. *Subject: $5000 due to the Capitol National Bank of Sacramento, Calif. And bill of sale, otherwise final."* (Then follow the identical items in the identical language contained in exhibit "B".) This document, however, contains this additional matter: *"Ucovich is to pay Sutter Butte Canal Company lights and telephone bills. The personal property covered by bill of sale on Ucovich Ranch as soon as Basile pays $5000 to the bank, the sale will take effect. The taxes are already pro-rated above, as to the rents on Joe, Ranch and the crop on Ucovich, Ranch one is to upset the other. Ucovich is to get rents if any and Joe the crops.*

"(Signed) M. UCOVICH

"(Signed) JOSEPH BASILE JR."

In other words, exhibit "C" is a copy of exhibit "B", but the portion in italics is added. The original of exhibit "C" the plaintiff claimed was lost and he attempted to prove a copy. ■ As stated above it is his claim that exhibits "A", "B", and "C", should be read together and construed as one contract. However, it is clear that cannot be done. In the first place, exhibit "A" is, standing alone, a full and

complete contract. The plaintiff claims the phrase "subject to the following encumbrances" is ambiguous. But we cannot agree with him. The phrase has a well-defined meaning. (*Andrews* v. *Robertson,* 177 Cal. 434 [170 Pac. 1129]; *Keeler* v. *Murphy,* 117 Cal. App. 386, 390 [3 Pac. (2d) 950].) The plaintiff cites no authority supporting his claim and we know of none. As the document is not ambiguous no construction is allowable. In 13 C. J. 520, the author says: "Further a court will not resort to construction when the intent of the parties is expressed in clear and unambiguous language, but will enforce the contract according to its terms." If exhibit "A" were ambiguous, but it is not, then several *contracts* relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together. (Civ. Code, sec. 1642.) Exhibits "B" and "C" each stand on a separate basis. ■ After exhibit "A" had been executed by the parties the plaintiff testified that the defendant directed him to take up further detail with Miss Hymson. She is the secretary of Mr. Holman, who has an office in the Russ building in San Francisco. The plaintiff gave her certain data and perhaps she received other data from the defendant. She held no written contract from either party. She prepared the document exhibit "B". It was not signed by either of the contracting parties. As a contract evidencing an exchange of real estate it did not meet the requirements of the statute of frauds. (11 Cal. Jur. 7; *Keeler* v. *Murphy,* 117 Cal. App. 386 [3 Pac. (2d) 950].) Therefore exhibit "B" could not be used as a coordinate instrument throwing light on exhibit "A". ■ Exhibit "C", the plaintiff claims, was made up in the same manner as exhibit "B". He asserts that it was also prepared by Miss Hymson. He testified that one or two days after February 28, 1931, pursuant to appointment he went to the office of Mr. Holman for the purpose of exchanging title deeds and closing the deal. On arriving at that office he and the defendant exchanged deeds. While in the office he claims exhibit "C" was signed by the plaintiff and defendant in duplicate; that he received one copy and the defendant received the other copy. The record does not show whether it was his claim that exhibit "C" was delivered before the title deeds were exchanged or afterwards. Furthermore, exhibit "A" distinctly provides that each party will exchange

his property (designating it) to the other subject to existing encumbrances and no promise was made by either to pay any moneys to the other party or on said encumbrances. Exhibit "C" contains provisions to the effect that the defendant would pay on the plaintiff's mortgage debt $5,000. The two documents conflict. Under such circumstances the latter will not be read with the former in construing it. (*Kunz* v. *Anglo & London Paris Nat. Bank*, 214 Cal. 341, 349 [5 Pac. (2d) 417]; 12 Am. Jur. 783, 784; *Milske* v. *Steiner Mantel Co.*, 103 Md. 235 [63 Atl. 471, 115 Am. St. Rep. 354, 5 L. R. A. (N. S.) 1105, 1111, 1112]; *Huyler's* v. *Ritz-Carlton Restaurant & Hotel Co.*, 1 Fed. (2d) 491, 492.) ■ Being antagonistic, the two instruments are not to be read together, but separately, and the last in date will, if it is valid, supersede the earlier instrument. (6 Cal. Jur. 300. "Contracts", sec. 181.) But, although exhibit "C", the last instrument executed by the parties, was an agreement to modify exhibit "A", it lacked a material element to make it a contract. There was no consideration to support it. That fact was stipulated to in open court. Hence, as a modifying contract, it was of no help.

■ Turning back to the body of the complaint and comparing its allegations with the contract as proved, it is noticed at once that there was no proof of the material allegations of plaintiff's complaint. The proof did not show or tend to show an act of conversion on the part of the defendant, but, on the contrary, it showed that he obtained title to the articles of personal property under a valid and enforceable contract of exchange. It is therefore clear that the trial court did not err in granting defendant's motion for a nonsuit.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 8, 1938.