[Civ. No. 7953. Third Dist. Sept. 27, 1951.]

HERBERT R. DALE, Respondent, v. PETER PALMER et al., Appellants.

664

Lewis & Lewis for Appellants.

Pease & Lally for Respondent.

PEEK, J.—This is an appeal by defendants from a judgment in favor of the plaintiff in an action for damages for breach of an agreement providing for the exclusive listing of certain homes then under construction.

In April, 1947, respondent and appellant Peter Palmer entered into the following agreement:

"In consideration of securing the services of the Dale Real Estate Co. to arrange construction financing for the under-

signed contractor and personally introducing him to the manager of the lending agency the contractor agrees to list all houses built by him and financed through this lending institution with the Dale Real Estate Co. Said listing to automatically start when construction begins and continue exclusively and irrevocably with said agent until thirty days after notice of completion has been filed. The commission for selling each house shall be five percent of the selling price. The selling price shall not exceed the higher of two limits, namely: F. H. A. or FEDERAL G.I. This contract shall remain in full force and effect for a period of one year and all houses started during that period shall become a part of this agreement.

(Signed) Peter Palmer<br>
Contractor''

''Carlton E. Owen
 Herbert R. Dale
 Witnesses''

Within the following year construction was begun on seven houses, for one of which respondent procured a purchaser and effected a sale, receiving a commission therefor. Shortly thereafter a dispute arose between the parties as to the purchase price to be set for the sale of the remaining houses, and as to the manner in which the respondent had handled the first transaction. Said appellant discharged respondent, obtained the services of another realtor, and, subsequent to the filing of this action, sold the remaining six houses. Respondent commenced this suit for damages for anticipatory breach of the listing agreement, praying damages in the amount of 5 per cent of the sale price of each house. The trial court found that Peter Palmer had repudiated the above agreement, refused to let respondent sell any of the remaining houses, and engaged another real estate broker to sell the houses. The court further found that respondent was entitled to a commission of 5 per cent of the purchase price for which the six houses were actually sold, and awarded damages accordingly.

Appellants contend that the agreement here involved is unenforceable, being in violation of section 10176, subdivision (f), of the Business and Professions Code. That section provides, in part, as follows:

''The commissioner may, upon his own motion, and shall upon the verified complaint in writing of any person, investi-

gate the actions of any person engaged in the business or acting in the capacity of a real estate licensee within this State, and he may temporarily suspend or permanently revoke a real estate license at any time where the licensee within the immediately preceding three years, while a real estate licensee, in performing or attempting to perform any of the acts within the scope of this chapter has been guilty of any of the following:

. . . . . . . . . . . . . .

"(f) The practice of claiming, demanding, or receiving a fee, compensation or commission under any exclusive agreement authorizing or employing a licensee to sell, buy or exchange real estate for compensation or commission where such agreement does not contain a definite, specified date of final and complete termination."

 Appellants also contend that the agreement in the present case fails to contain a "definite, specified date of final and complete termination" within the meaning of the said subdivision (f).

In the case of *Castleman* v. *Scudder,* 81 Cal.App.2d 737 [185 P.2d 35], this court considered precisely the same question with regard to a nearly identical provision in section 10301, subdivision (f), of the Business and Professions Code. Section 10301 establishes as a ground for the suspension or revocation of a business opportunity broker's license, "(f) The practice of claiming or demanding a fee . . . under any exclusive agreement . . . where such agreement does not contain *a definite, specified date of final and complete termination.*" (Italics added.) There the petitioners sought review of the action of the Real Estate Commissioner in revoking a business opportunity broker's license. The agreements into which the parties had entered contained the clause: "This agency shall continue 30 days from date hereof and thereafter until three days have elapsed after receipt of written notice from the Owner, terminating this agency, sent by registered mail, or delivered in person to said agent." We held that the agreements failed to provide a definite, specified date of termination, and in so doing we stated: "The statute does not refer to a *method* of computation of the termination date upon the happening of some future event, but rather to the failure to set forth a definite specified *date* of final and complete termination. . . . By particular wording section 10301 (f) can be construed only to denote a definite date of termination specifically set forth in a contract at the time of its exe-

cution by the owner. An interpretation such as is contended for by petitioners, if adopted, would only perpetuate the very indefinite feature which the Legislature has said is contrary to the general public welfare.'' The agreement under consideration in the present case is subject to the same defect. The final termination date can be computed only by reference to the happening of a future event. In other words, the agreement does not contain a definite, specified date of termination. Because of the similarity in the two code sections, there can be no doubt but that the reasoning of the Castleman case applies equally to section 10176(f) of the Business and Professions Code. Neither is our conclusion that the contract here involved does not contain the required specified date of termination in any way altered by the holding of the District Court of Appeal in the recent case of *Lowe* v. *Loyd,* 93 Cal.App.2d 684 [209 P.2d 851]. There the authorization to sell was to terminate automatically six months following 90 days from the date of the agreement. The final termination date was definite, specified, and in no way dependent upon the happening of some future event.

The remaining question then is whether or not the agreement is thereby rendered void. In *Smith* v. *Bach,* 183 Cal. 259, 262 [191 P. 14], the applicable rule is stated as follows: ''The general rule controlling cases of this character is that where a statute prohibits or attaches a penalty to the doing of an act, the act is void, and this, notwithstanding that the statute does not expressly pronounce it so, and it is immaterial whether the thing forbidden is *malum in se* or merely *malum prohibitum*. A statute . . . prohibiting the making of contracts, except in a certain manner, *ipso facto* makes them void if made in any other way. (13 Cyc. 351; 13 Corpus Juris, p. 410.) The imposition by statute of a penalty implies a prohibition of the act to which the penalty is attached, and a contract founded upon such act is void. This general rule finds support in the decisions of this state. (*Berka* v. *Woodward,* 125 Cal. 119, 127 [57 P. 777, 73 Am.St.Rep. 31, 45 L.R.A. 420], and cases cited; *Bentley* v. *Hurlburt,* . . . [153 Cal. 796 (96 P. 890)].)'' Furthermore, where the statute imposes a penalty for the doing of an act, even though it does not expressly prohibit it or make the act void, a contract founded upon such act is void. (*California Delta Farms, Inc.* v. *Chinese American Farms, Inc.,* 207 Cal. 298 [278 P. 227].)

Thus since that portion of section 10176 of the Business and Professions Code which authorizes the real estate

commissioner to forfeit the license of a broker or salesman is highly penal in nature (*Schomig* v. *Keiser*, 189 Cal. 596 [209 P. 550]), it is immaterial that the imposition of the penalty may rest within the discretion of the commissioner, or that no penalty was imposed for the acts here involved. The contract founded upon the illegal act was void *ab initio* (*Smith* v. *Bach*, *supra*), and cannot thereafter be rendered valid by the fact that no penalty was actually imposed for the doing of the illegal act.

But respondent argues that the present agreement does not come within the purview of the code section because it is not a listing contract, but rather an agreement to list in the future. Subdivision (f) refers to "*any* exclusive agreement authorizing or *employing* a licensee to sell. . . ." (Italics added.) Under the provisions of this agreement, already set forth, the appellant agreed to list all houses built by him, the listing to start automatically when construction begins. There can be no question but that under the agreement respondent became employed to sell all the houses in question. Clearly, it is the type of contract contemplated by subdivision (f).

Since we have concluded that the agreement here sued upon is void, being in contravention of section 10176 of the Business and Professions Code, and since no circumstances appear which would bring the case within any of the exceptions to the rule that a party to an illegal contract cannot come into court to enforce rights arising out of the illegal transaction (*Franklin* v. *Nat C. Goldstone Agency*, 33 Cal.2d 628 [204 P.2d 37]), it follows that the respondent is not entitled to damages. It is unnecessary to consider, therefore, the other contentions raised by the appellants pertaining to the alleged bad faith of the respondent, and the alleged failure of the contract to contain any formula for arriving at a definite purchase price.

Judgment is reversed.

Van Dyke, J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied October 26, 1951, and respondent's petition for a hearing by the Supreme Court was denied November 21, 1951. Shenk, J., Carter, J., and Schauer, J., voted for a hearing.