[Civ. No. 18843.   First Dist., Div. Two.   June 6, 1960.]

EDWARD L. NICHOLS, Respondent, v. BOSWELL-ALLI-
ANCE CONSTRUCTION CORPORATION (a Corpora-
tion), Appellant.

Loy Dale Wright, Cowan & Wright, and Monteleone & McCrory for Appellant.

Bray, Baldwin & Ogden for Respondent.

STONE, J. pro tem.*—Appellant, the developer of a subdivision in Contra Costa County known as Sheffield Village, entered into an agreement with respondent giving him an exclusive broker's listing for the tract. The agreement was proper except for want of a termination date which is required by Business and Professions Code, section 10176, subdivision (f). Appellant rescinded the agreement after respondent had sold three lots, which entitled him to commissions totaling $525 under the terms of the listing agreement. The court gave judgment for the $525. Respondent also sought damages by reason of respondent's anticipatory breach and the trial court found that he would have earned an additional $2,575 in commissions had he been allowed to complete the contract. Judgment for this amount was also awarded the respondent.

Appellant filed a counterclaim which was predicated upon

*Assigned by Chairman of Judicial Council.

a separate transaction. When the land in the tract was conveyed to appellant subdivider, the owners, Mr. and Mrs. Hale, reserved title to two lots. The subdivision plan recorded by appellant as developer and for which he posted a performance bond made no exception of the two lots. Appellant alleges that the Hales were to pay him for any subdivision improvements to their lots. Sometime after the improvements had been made, the Hales gave respondent a 60-day listing of the property, together with an option permitting him or his assigns to purchase them. Within the 60 days, respondent exercised the option and the parties entered into an agreement entitled "Deposit Receipt." Appellant, by his counterclaim, contends that he was a third party beneficiary in the agreements between the Hales and respondent and as such was entitled to collect for the improvements from respondent. The trial court denied appellant recovery on his counterclaim.

Appellant subdivider has appealed from (1) the judgment of the court awarding respondent commissions for the three lots sold, (2) the award of $2,575 for commissions which respondent was prevented from earning by appellant's anticipatory breach and (3) the court's denial of appellant's right to recover as a third party beneficiary on the counterclaim.

## The Complaint

Appellant first contends that the court erred in allowing respondent to recover anything by virtue of the listing. It is his position that the agreement giving respondent an exclusive listing of the tract lots was illegal and void because it did not contain a "definite, specified date of final and complete termination." Business and Professions Code, section 10176, subdivision (f), provides:

"The commissioner may, upon his own motion, and shall upon the verified complaint in writing of any person, investigate the actions of any person engaged in the business or acting in the capacity of a real estate licensee within this State, and he may temporarily suspend or permanently revoke a real estate license at any time where the licensee, while a real estate licensee, in performing or attempting to perform any of the acts within the scope of this chapter has been guilty of any of the following:

". . . . . . . . . . . .

"(f) The practice of claiming, demanding, or receiving a fee, compensation or commission under any exclusive agree-

ment authorizing or employing a licensee to sell, buy or exchange real estate for compensation or commission where such agreement does not contain a definite, specified date of final and complete termination."

Appellant relies upon *Dale* v. *Palmer,* 106 Cal.App.2d 663 [235 P.2d 650], holding a similar agreement to be void because it violated Business and Professions Code section 10176, subdivision (f). It must be conceded that under the broad language of Dale any agreement made in violation of a statute is void. No distinction is made as to the type of agreement, or whether at the time of breach the agreement was executed or executory. In Dale the court at page 667 quoted with approval an earlier Supreme Court case, *Smith* v. *Bach,* 183 Cal. 259, 262 [191 P. 14], as follows: "A statute . . . prohibiting the making of contracts, except in a certain manner, *ipso facto* makes them void if made in any other way." Citing this authority, appellant contends that the agreement herein, which was made in violation of section 10176, subdivision (f) of the Business and Professions Code, is void.

The harsh rule of *Dale* v. *Palmer, supra,* and of *Smith* v. *Bach, supra,* has been tempered by the Supreme Court. In *Lewis & Queen* v. *N. M. Ball & Sons,* 48 Cal.2d 141 [308 P.2d 713], the court held at page 151:

"In some cases, on the other hand, the statute making the conduct illegal, in providing for a fine or administrative discipline excludes by implication the additional penalty involved in holding the illegal contract unenforceable; or effective deterrence is best realized by enforcing the plaintiff's claim rather than leaving the defendant in possession of the benefit; or the forfeiture resulting from unenforceability is disproportionately harsh considering the nature of the illegality. In each such case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved. (See *Wilson* v. *Stearns,* 123 Cal.App. 2d 472, 481-482 [267 P.2d 59])."

Thus, the present test of enforceability is, "In each such case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved." Viewing our case in the light of this rule we find precedent for holding that real estate listing agreements which fail to comply with the Business and Professions Code, section 10176, are not necessarily void *ipso facto*. *Wilson* v. *Stearns,* 123 Cal.App.2d 472 [267 P.2d 59], which is

cited with approval in *Lewis & Queen* v. *N. M. Ball & Sons, supra,* holds that a real estate listing agreement lacking a definite termination date, as does ours, is nevertheless enforceable as between the parties to the extent that it has been performed. In substance, the court held that the statute was enacted to protect the buying public, and since the purchaser had satisfactorily completed his transaction protection of the public was no longer a consideration. The real estate agent was allowed to recover commissions from the subdivider to whom they had been paid. In arriving at this conclusion the court first distinguished *Dale* v. *Palmer, supra,* and limited its application to its facts, namely, to an executory listing agreement. The court held at page 480: "The *Dale* v. *Palmer* case involved an executory problem in that it was an action for anticipatory breach and for unearned commissions. The action at hand involves an agreement that was executed. It is an action for commissions admittedly previously earned and paid over to respondent Stearns. In the *Dale* v. *Palmer* case the broker sold only one house for which he received his commission. In his action at law he sought commissions for the sales of six other houses which he had not sold. . . .

"Because of the manifold distinguishable facts in the *Dale* v. *Palmer* case and the one at bar, we are persuaded that the holding in the former case should be confined to the exact factual situation there present, and not militate against appellant's recovery herein."

The court then adopted and applied the unjust enrichment theory expounded in *Norwood* v. *Judd,* 93 Cal.App. 2d 276 [209 P.2d 24], by the following language appearing at page 482 of Wilson: "Rather than permit the unjust enrichment of respondent George Stearns, we are disposed to apply the rule announced in the case of *Norwood* v. *Judd,* 93 Cal. App.2d 276, 288 [209 P.2d 24], wherein, as Mr. Presiding Justice Peters, speaking for the court, in a well reasoned and considered opinion, said: 'The rule that the courts will not lend their aid to the enforcement of an illegal agreement or one against public policy is fundamentally sound. The rule was conceived for the purposes of protecting the public and the courts from imposition. It is a rule predicated upon sound, public policy. But the courts should not be so enamored with the Latin phrase "*in pari delicto*" that they blindly extend the rule to every case where illegality appears somewhere in the transaction. The fundamental purpose of the

rule must always be kept in mind, and the realities of the situation must be considered. *Where, by applying the rule, the public cannot be protected because the transaction has been completed, where no serious moral turpitude is involved, where the defendant is the one guilty of the greatest moral fault, and where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied.'* (Emphasis added.) (See, also, *Denning* v. *Taber,* 70 Cal.App.2d 253 [160 P.2d 900] and *Brooks* v. *Martin,* 2 Wall. (69 U.S.) 70 [17 L.Ed. 732].)''

The rationale of Wilson was adopted by this court in *Iusi* v. *Chase,* 169 Cal.App.2d 83, 87 [337 P.2d 79], wherein it said: ''. . . We find no indication in this subdivision of section 10176 that it is designed to protect brokers. Since the clients are the protected class, and the buyer here has in fact paid the commission, the modern rule will not strain to establish illegality as a defense which will permit one broker to retain all of the fruits of the transaction. (*Norwood* v. *Judd,* 93 Cal.App.2d 276, 288 [209 P.2d 24].) The defense of illegality is not available to Chase.''

Thus the trial court properly found that respondent was entitled to recover commissions for houses sold by him before appellant rescinded the agreement.

It is interesting that the cases we have just discussed, which support respondent's right to recover commissions earned, negate his right to recover commissions he was prevented from earning by reason of appellant's repudiation of the agreement. Respondent's right to recover is limited to the executed aspects of the listing contract. The trial court erred in allowing anticipatory damages of $2,575. Respondent argues that he employed salesmen, maintained an office and telephone at the tract, processed other applications and performed services which unjustly enriched appellant and sustain the award of $2,575. The finding of the trial court precludes such argument. It reads as follows:

''That had plaintiff been able to continue to perform the agreement as originally set forth, plaintiff would have realized Twenty-Five Hundred and Seventy-Five ($2575.00) Dollars by way of commission for sales and for processing applications.''

## THE COUNTERCLAIM

The Hales, original owners who reserved two lots of the tract, gave respondent a 60-day listing, together with an option

permitting respondent or his assigns to purchase the two lots within that time. The listing and option which is dated September 17, 1956, provided: "Improvements to be for by Buyer." Obviously, the word "paid" was inadvertently omitted. However, on November 14, 1956, respondent exercised the option and the parties entered into another agreement entitled "Deposit Receipt." This latter agreement detailed the terms of sale. It provided for the establishment of an escrow; it required a certificate of title insurance; it specified that taxes, interest, rents and insurance should be pro-rated as of the closing of the transaction; and it provided that "[a]ny street, sewer or other assessments or improvement bonds existing at the date of the closing of the transaction shall be . . . To be paid by Buyer." Prior to the conveyance of the property by the Hales to respondent, the appellant had placed sidewalks, gutters, sewer and water lines and other improvements on the property. Appellant set up the value of these improvements furnished by him as a counterclaim against respondent on the theory that he was a third party beneficiary of the agreements between the Hales and respondent. The court found against appellant on the counterclaim.

Appellant contends that the November 14th deposit receipt and the earlier option of September 17th should be construed together as integrated documents. To do so creates an ambiguity which, he asserts, required the court to take extrinsic evidence to determine the intent of the parties. The trial court adopted appellant's theory and admitted extrinsic evidence, but decided in favor of respondent. The court specifically found that it was not the intent of the parties to make appellant a third party beneficiary and that there was no agreement that respondent would pay appellant for subdivision improvements made to the two lots while the Hales owned them. Since the court disbelieved appellant's witnesses concerning the intent of the parties and believed respondent, this court is bound by the trial court's finding. ▆▆▆ The testimony of one witness, if credible, is sufficient to support a finding even though all other witnesses testify to the contrary. (*Francis* v. *City & County of San Francisco*, 44 Cal.2d 335, 340 [282 P.2d 496]; *Sim* v. *Weeks*, 7 Cal.App.2d 28, 39 [45 P.2d 350].) ▆▆▆ In any event appellant has no ground for complaint since there was no reason for the trial court to admit extrinsic evidence in the first place. The contract of November 14th is clear and explicit in that it refers to street, sewer or other assessments or improvement bonds. It makes

no reference to the subdivision improvements which were not a lien against the property. Nor does the agreement of November 14th incorporate the agreement of September 17th by reference. Therefore, the November 14th agreement being free from ambiguity must stand alone and the sense of the agreement derive from its terms. (*Ucovich* v. *Basile, Jr.,* 26 Cal.App.2d 272, 276 [79 P.2d 188]; *Reid* v. *Johnson,* 85 Cal. App.2d 112, 116 [195 P.2d 106]; *Briggs* v. *Marcus-Lesoine, Inc.,* 3 Cal.App.2d 207, 212 [39 P.2d 442]; *Sass* v. *Hank,* 108 Cal.App.2d 207, 211 [238 P.2d 652].) The agreement of November 14th clearly supports the finding of the trial court that under and by its terms the appellant was not a third party beneficiary.

The judgment awarding respondent an earned commission of $525 is affirmed; that portion of the judgment awarding respondent $2,575 damages for anticipatory breach of contract is reversed; the judgment denying appellant's counterclaim is affirmed.

Kaufman, P. J., and Draper, J., concurred.