[Civ. No. 13036. Fourth Dist., Div. Two. Aug. 6, 1973.]

FRANK R. BABCOCK et al., Plaintiffs and Appellants, v.
ROBERT L. HOUSTON et al., Defendants and Respondents.

**COUNSEL**

Tiday & Bowers and Ronald L. Tiday for Plaintiffs and Appellants.

Jim Bentson for Defendants and Respondents.

**OPINION**

**TAMURA, J.**—Plaintiffs sued Pacific Island Village, Inc. and defendants Robert L. Houston and Louise Houston to recover real estate brokers' commissions. Judgment was entered in favor of the brokers against the corporate defendant but not against the individuals. Plaintiffs appeal from that portion of the judgment adjudging that plaintiffs take nothing against the Houstons.

The findings reflect the following pertinent facts:

On October 22, 1968, Robert Houston executed a written agreement with plaintiffs Teal and Babcock giving them the exclusive right to sell lots in a tract known as Pacific Island Village No. III. The agreement lacked a definite termination date as required by Business and Professions Code section 10176, subdivision (f). Shortly thereafter Houston formed Pacific Island Village, Inc. with the Houstons as the sole stockholders. The corporation acquired title to the tract and constructed houses on it.[1] Meanwhile Teal and Babcock formed a realty corporation known as Teal and Babcock, Inc. and proceeded to sell the houses through the realty corporation and received commissions therefor.

---

[1] The record does not reflect what interest, if any, Houston had in the tract at the time he executed the exclusive agreement with plaintiffs.

On April 13, 1970, Houston terminated plaintiffs' services. As of that date seven lots were in escrow and the escrow instructions contained authorizations executed by Houston for the payment of real estate commissions to plaintiffs. After plaintiffs were discharged, Houston revoked the authorizations. Prior to their discharge, plaintiffs had received from a prospective purchaser a $500 deposit for the sale of lot 58 which sum they had turned over to Houston. Houston thereafter consummated that sale.

At the time plaintiffs were discharged, the corporation had sufficient funds with which to pay all commissions claimed by plaintiffs but as of the date of trial its only asset was a $30 bank account.

Plaintiffs sued to recover commissions for the sale of the seven lots ($8,559) and lot 58. No damages were sought for anticipatory breach.

The court concluded that as to the seven lots the written authorizations for payment of commissions contained in the escrow instructions constituted sufficient written memoranda to obligate the corporate defendant and awarded judgment against it for $8,559. However, the court denied recovery against Houston under the exclusive sales agreement on the ground the contract was in violation of Business and Professions Code section 10176, subdivision (f). The court also denied recovery against the corporate as well as the individual defendants for the commission claimed on the sale of lot 58 on the ground there was no written memorandum sufficient to satisfy the statute of frauds.

Plaintiffs contend the court erred in failing to award judgment against the Houstons. It is urged (1) although the exclusive right to sell agreement was in violation of Business and Professions Code section 10176, subdivision (f), it was nevertheless enforceable with respect to sales procured by plaintiffs prior to their discharge, including the sale of lot 58 and (2) the Houstons should have been found personally liable as the *alter ego* of the corporation.

The central issue on this appeal is whether the exclusive agreement was enforceable against Robert L. Houston with respect to sales made by plaintiffs prior to their discharge. For reasons which follow, we have concluded that the answer should be in the affirmative.

Business and Professions Code section 10176, subdivision (f), makes the following a ground for disciplinary action against a real estate licensee: "(f) Claiming, demanding, or receiving a fee, compensation or commission under any exclusive agreement . . . to perform any acts set forth in Sec-

tion 10131 . . . where such agreement does not contain a definite, specified date of final and complete termination." The quoted subdivision formerly began with the words "The practice of" but that phrase was deleted by a 1955 amendment. (Stats. 1955, ch. 1467.)

We find no appellate court decision on the effect of the 1955 amendment with respect to the right of a broker to recover commissions under an exclusive agreement lacking a final termination date. However, there have been three cases under the section as it formerly read, namely, *Dale* v. *Palmer* (1951) 106 Cal.App.2d 663 [235 P.2d 650], *Wilson* v. *Stearns* (1954) 123 Cal.App.2d 472 [267 P.2d 59], and *Nichols* v. *Boswell-Alliance Const. Corp.* (1960) 181 Cal.App.2d 584 [5 Cal.Rptr. 546].

In *Dale* v. *Palmer, supra,* 106 Cal.App.2d 663, after the broker sold one lot in a subdivision (for which he was paid a commission) under an exclusive sales agreement, he was discharged and the owner retained the services of another broker through whom he proceeded to sell the six remaining houses in the tract. The original broker sued to recover commissions for the sale of the six houses. In reversing a judgment for the broker, the reviewing court held the exclusive sales agreement void and unenforceable because it lacked a definite termination date. The court relied upon the proposition enunciated in *Smith* v. *Bach,* 183 Cal. 259 [191 P. 14], that where a statute imposes a penalty for the doing of an act even though it does not expressly prohibit it or make it void, a contract founded upon such act is void and unenforceable.

In *Wilson* v. *Stearns, supra,* 123 Cal.App.2d 472, the court refused to apply the harsh *Dale* v. *Palmer* rule to deny a broker recovery with respect to sales actually made by the broker prior to his discharge. The court distinguished *Dale* as a case involving an "action for anticipatory breach and for unearned commissions." In permitting recovery with respect to services rendered, the *Wilson* court applied the unjust enrichment theory enunciated in *Norwood* v. *Judd,* 93 Cal.App.2d 276 [209 P.2d 24], where the court through Presiding Justice Peters stated: "Where, by applying the rule [that courts will not lend aid to the enforcement of an illegal contract], the public cannot be protected because the transaction has been completed, where no serious moral turpitude is involved, where the defendant is the one guilty of the greatest moral fault, and where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied." (93 Cal.App.2d 276, 289.) The Supreme Court has cited *Wilson* and *Norwood* for the foregoing proposition with approval. (*Tri-Q, Inc.* v. *Sta-Hi Corp.,* 63 Cal.2d 199, 219

[45 Cal.Rptr. 878, 404 P.2d 486]; *Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141, 151-152 [308 P.2d 713].)

*Wilson* v. *Stearns, supra,* 123 Cal.App.2d 472, was followed in *Nichols* v. *Boswell-Alliance Const. Corp., supra,* 181 Cal.App.2d 584. There a subdivider granted a broker an exclusive right to sell under terms similar to the agreement involved in the case at bench. After the broker sold three lots entitling him to $525 in commissions, the subdivider terminated the broker's services. The trial court awarded the broker judgment not only for the commissions earned on the three lots sold but also damages for anticipatory breach for commissions which would have been earned had the broker completed the contract. On the authority of *Wilson* v. *Stearns, supra,* the appellate court affirmed the judgment as to the earned commissions but reversed as to damages for anticipatory breach.

█ Defendants urge that the 1955 amendment deleting the words "The practice of" from Business and Professions Code section 10176, subdivision (f), nullified *Wilson* v. *Stearns.* We disagree. While the *Wilson* decision referred to the then statutory words "The practice of" and alluded to the lack of evidence in that case that the broker had been engaged in the "practice" denounced by the statute, the court rested its decision on the *Norwood* exception to the general rule against enforcement of an illegal contract or one against public policy. While the 1955 amendment may have been designed to render a single isolated transaction in violation of the statute a basis for disciplinary action against a broker, it did not affect the *Wilson* rationale pertaining to the contractual rights of the parties.

The principle announced in *Wilson* and *Norwood* clearly controls the instant case. Plaintiffs were not seeking damages for anticipatory breach but only the recovery of earned commissions. The court found (1) the parties to the agreement were unaware of the provisions of Business and Professions Code section 10176, subdivision (f), until after the brokers had been discharged; (2) plaintiffs had in all respects performed the provisions of the written agreement on their part to be performed and had offered to continue to perform even after notice of discharge; and (3) "the conduct of the plaintiffs, both before and after April 13, 1970, was in good faith and did not result in any damages to defendants, or any of them." Those findings bring the present case squarely within the *Wilson* exception to the general rule. The transactions have been completed, the public cannot be protected by refusing enforcement, no moral turpitude was involved, and defendant Houston would be unjustly enriched if the general rule were applied.

■ Houston cannot escape liability under the contract on the ground the services were rendered for the corporation. The question is not one of disregarding the corporate entity but whether plaintiffs' services were rendered pursuant to and in accordance with the exclusive agreement executed by Houston. The findings compel the conclusion they were. The court found that the exclusive sales agreement was neither assigned to nor ratified by the corporation; that no other listing agreement was ever entered into between the parties; that from the date of the agreement to the date of plaintiffs' discharge, the parties "did not change their manner of performance, development or procurement of sales of the lots" in the tract; that numerous authorizations for payment of commissions through escrow were executed by Houston individually and not in any corporate capacity; and that plaintiffs had in all respects performed the provisions of the written agreement on their part to be performed until their services were terminated. Plaintiffs having rendered services pursuant to the written contract, Houston was personally obligated thereunder. This necessarily includes the commission for the sale of lot 58 as well as for the seven lots which were in escrow when plaintiffs were discharged.

Houston also contends the description of the property as Pacific Island Village No. III in the written exclusive right to sell contract is insufficient to satisfy the statute of frauds. We disagree. ■ It has been uniformly held that insofar as the statute of frauds is concerned, the essential part of a contract to employ a real estate broker is the matter of employment and consequently brokers' contracts are not to be declared void merely because of a defect, ambiguity or uncertainty in the description of the property to be sold, when such defect can be cured by allegations and proof of extrinsic facts and circumstances. (*Maze* v. *Gordon,* 96 Cal. 61 [30 P. 962]; *Pray* v. *Anthony,* 96 Cal.App. 772, 777-778 [274 P. 1024]; *Sanchez* v. *Yorba,* 8 Cal.App. 490, 494-495 [97 P. 205].) Here the trial court expressly found that all the parties to the written agreement "knew the exact location and boundaries of Pacific Island Village III."

In view of the foregoing conclusions, plaintiffs' additional contention that the findings compel the conclusion the corporate defendant was the *alter ego* of the Houstons is relevant only insofar as it relates to the liability of defendant Louise Houston. The trial court found against plaintiffs on the *alter ego* issue. ■ Whether the corporation is an *alter ego* of an individual is ordinarily a question of fact. (*T W M Homes, Inc.* v. *Atherwood Realty & Inv. Co.,* 214 Cal.App.2d 826, 852 [29 Cal.Rptr. 887]; *Associated Vendors, Inc.* v. *Oakland Meat Co.,* 210 Cal.App.2d 825, 836-837 [26 Cal.Rptr. 806].) ■ This being a judgment roll appeal, the sufficiency of the evidence to support the court's findings is not open to

attack. Plaintiffs contend, however, that some of the court's findings compel an ultimate finding that the corporation was the *alter ego* of the Houstons. The contention is devoid of merit. ■ One of the requisite elements for the application of the doctrine is that observance of the separate existence of the corporation would sanction a fraud or promote injustice. (*Wiseman* v. *Sierra Highland Min. Co.,* 17 Cal.2d 690, 697-698 [111 P.2d 646]; *Cleaning & P. Co.* v. *Hollywood L. Service,* 217 Cal. 124, 129 [17 P.2d 709].) In the instant case the court expressly found that "there is no showing that the stockholders disregarded the corporate entity or used such corporate entity to perpetrate a fraud, circumvent a Statute, accomplish any wrongful or inequitable purpose, and therefore, the individual shareholders are not liable."[2]

The judgment as to defendant Louise Houston must, therefore, be affirmed. Under the findings, she was not liable under the *alter ego* theory. And not being a party to the exclusive listing agreement, she was not liable thereunder.

That portion of the judgment adjudging that plaintiffs take nothing against defendant Robert L. Houston individually is reversed with directions to enter judgment against him in accordance with the views herein expressed. The judgment as to defendant Louise Houston is affirmed.

Kerrigan, Acting P. J., and Kaufman, J., concurred.

The petition of respondent Robert L. Houston for a hearing by the Supreme Court was denied October 3, 1973.

---

[2]Although the finding was denominated a "Conclusion of Law" by the trial court, such mislabeling is of no import. It is well settled that the requirement that findings of fact and conclusions of law be separately stated is merely directory and that if correct findings and conclusions are made, they will be considered in their true character irrespective of the classification in which they may be included. (*Bechtold* v. *Bishop & Co., Inc.,* 16 Cal.2d 285, 293 [105 P.2d 984]; *Gustafson* v. *Blunk,* 4 Cal. App.2d 630, 635-636 [41 Cal.Rptr. 953]; *Butler* v. *Agnew,* 9 Cal.App. 327, 330 [99 P. 395].)