[Civ. No. 58926. Second Dist., Div. One. Nov. 21, 1980.]

MILDRED CAVENESS, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD et al., Defendants and Respondents.

618

COUNSEL

Bernard L. Allamano, John D. Mickus and Robert W. Feinstein for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Scott D. Rasmussen, Deputy Attorney General, for Defendants and Respondents.

OPINION

**SPENCER, P. J.—**

### INTRODUCTION

Appellant Mildred Caveness appeals from a judgment denying a petition for a peremptory writ of mandate to compel respondent State Personnel Board of the State of California (Board) to order respondent State of California Department of Motor Vehicles (Department) to reinstate appellant to her position as a program technician I with the Department and to award her back salary from the effective date of her dismissal.

### STATEMENT OF FACTS

Appellant has been a permanent civil service employee of the Department continuously since December 1964. On February 2, 1975, appellant was officially reprimanded for inexcusable neglect of duty and

inexcusable absence without leave. On September 14, 1977, appellant was served with a notice of dismissal charging that the alleged acts of misconduct described therein constituted grounds for dismissal under Government Code section 19572:[1] subdivision (e), insubordination; subdivision (m), discourteous treatment of the public or other employees; and subdivision (q), violation of this part or board rule.[2] On October 5, 1977, appellant was served with an amendment to the notice which changed the effective date of dismissal from September 23, 1977 to September 30, 1977. The amendment failed to list insubordination (Gov. Code, § 19572, subd. (e)) as one of the causes for dismissal.

Appellant appealed the dismissal to the Board and was accorded an administrative hearing before a hearing officer which commenced on February 10, 1978. After a hearing as to paragraphs I - IV, the matter was continued in order to permit the Department to amend paragraphs V and VI of the notice of dismissal to directly state as charging allegations acts which had been indirectly stated as subjects of corrective interviews. On March 3, 1978, appellant was served with a notice of dismissal so amended. The amended notice erroneously set forth the effective date of dismissal as March 10, 1978.

The administrative hearing resumed on May 19, 1978. At the conclusion of the hearing, the Department of Motor Vehicles moved to amend the effective date of dismissal to read September 30, 1977. The motion was granted.

On July 3, 1978, the hearing officer issued a proposed decision, including findings of fact, as follows; to wit:

"III

On July 26, 1977, while working at the public counter, appellant was serving a customer who was required to pay additional registration fees.

---

[1]Government Code, § 19572 provides in pertinent part: "Each of the following constitutes cause for discipline of an employee ...:
"(e) Insubordination.
. . .
· "(m) Discourteous treatment of the public or other employees.
. . .
"(q) Violation of this part or board rule ...."
[2]Specifically alleged was violation of "board rule 172 which states...employees in the state civil service shall possess the general qualifications of ... good judgment ... courtesy, ability to work cooperatively with others ..."

The customer inquired why additional registration fees were being requested. Appellant refused to provide the requested explanation but rather placed her chin in her cupped hand as she rested upon the counter. The customer informed the appellant that she was rude; appellant replied to the customer 'you are rude.' The customer made inquiry as to what she should do with her papers. Appellant did not respond to the inquiry. During the course of the transaction appellant asked the customer, 'what's the matter, do you have your shoes on the wrong feet?'

"IV

Appellant's conduct of July 26, 1977 was observed by a fellow employee who reported it to her supervisor.

When encountering the fellow employee, who had reported her conduct later in the day, appellant called 'tattle tale, tattle tale.' Appellant also stated to her fellow employee, 'be sure to get my name right, tattle-tale. It's Millie Caveness, you bitch.'

At a later time on the same day appellant again called her fellow employee a bitch.

"V

In July 1977, it was a practice in the Pasadena office of respondent where appellant worked that customers who had entered the building prior to normal closing time at 5:00 p.m. were to be served. In order to accommodate this requirement, some of the employees working in the Pasadena office were assigned to arrive late in the morning and remain late in the evening. All employees were, however, instructed that it was their obligation to complete serving any customer whom they had started to serve prior to the normal closing time of the office.

On July 15, 1977, appellant had commenced to serve a customer at approximately 5:00 p.m. She asked her supervisor to provide a relief employee to complete service to the customer so that she could leave at the normal closing time. Appellant was informed by her supervisor that a relief employee would be sent as soon as one was free but that no one was immediately available to perform the relief function. After receiving this information, appellant attempted to induce one of her

co-workers who had completed her work for the day to relieve her at the window. The co-worker refused. Appellant then attempted to secure the cooperation of another co-worker who was currently engaged in serving a customer at the window. The co-worker agreed to serve appellant's customer. Appellant closed her window and left leaving the customer who she was serving to wait until her co-worker had completed the work with the patron whom she was serving at the time.

### "VI

On July 26, 1977, appellant's supervisor approached appellant for the purpose of discussing a transaction which appellant had mishandled. Appellant, although she was at her window, had not completed her lunch hour. She refused to speak to the supervisor until her lunch hour was completed.

After appellant's lunch hour had expired, appellant's supervisor again approached her attempting to point out to her the problem with the transaction. Appellant refused to discuss the transaction with the supervisor at her window.

It is a normal and routine procedure for supervisors in the Pasadena office to discuss transactions with employees at their work site.

". . . . . . . . . . . . . . .

### "X

On February 2, 1975, appellant was officially reprimanded for inexcusable neglect and inexcusable absence without leave."

Based upon the foregoing findings, the hearing officer concluded that appellant had exhibited a continuing course of conduct which was a cause for discipline under subdivisions (e) and (m) of Government Code section 19572 and warranted dismissal.

Accordingly, the hearing officer in his proposed decision to the Board sustained without modification the Department's dismissal of appellant and denied her motion for compensation based on the alleged violation of Board rule 61 and her rights under *Skelly, infra.*

After "careful consideration" of the findings and proposed decision on July 13, 1978, the Board adopted both as its decision.

CONTENTIONS

I

Appellant first contends that her dismissal from a permanent civil service position was invalid and constitutes a denial of due process in that she was not afforded an opportunity to respond to new charges and a new cause of action set forth in the second amended notice of dismissal prior to imposition of discipline.

II

Appellant next contends that the Board committed a prejudicial abuse of discretion by permitting the Department to amend the second amended notice of punitive action to strike the date of March 10, 1978 as the effective date of dismissal and to insert the date of September 30, 1977 in lieu thereof. She asserts that the amendment of the effective date of dismissal violated her preexisting right to respond to new charges and an additional cause of action.

III

A further contention is that the Board's determination that appellant's conduct constituted insubordination within the meaning of Government Code section 19572, subdivision (e), and discourteous treatment of fellow employees within the meaning of Government Code section 19572, subdivision (m), is not supported by findings and the findings rendered are not supported by substantial evidence based on the entire record.[3]

---

[3]Although appellant both contends and argues repeatedly that the record as a whole does not meet the substantial evidence test, in point of fact in her notice to the trial court clerk to prepare a clerk's transcript appellant did not specifically designate and request inclusion of the administrative hearing reporter's transcript and it is not part of the record before us. Appellant's designation of the petition for writ of mandate "with Exhibits attached thereto, filed January 1, 1979" was insufficient to apprise the trial court clerk that the reporter's transcript was to be included. When the petition was filed, the transcript was not attached physically as an exhibit, nor was it thereafter so attached. The clerk complied with the request as written.

## IV

Finally, appellant contends that imposition of the penalty of dismissal is so severe and disproportionate to any alleged wrongful act as to constitute a clear abuse of discretion.

## DISCUSSION

## I

Appellant's first contention that she was denied due process of law because she was not afforded an opportunity to respond to the second amended notice of dismissal is without merit.

█ The leading case articulating due process requirements for California state permanent civil service employees is *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774]. Under *Skelly*, a state agency must accord permanent civil service employees specific procedural rights *before* discipline is effected. The court held that minimal due process mandates that the employee be given "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.*, at p. 215.) *Skelly* requirements are set forth with specificity in Board rule 61,[4] and appellant was accorded such rights when she was served with the original notice of dismissal on September 14, 1977.

█ Appellant argues that the second amended notice stated a new cause of action and listed new charges; therefore, she should have been given a new opportunity to respond directly to the Department prior to dismissal. Any claim that the second amended notice stated a new cause of action must rest on the absence of insubordination from the list of causes in the first amended notice. The original notice listed insubordination as a cause for dismissal together with specific acts and omissions;

---

[4]Board rule 61 states in pertinent part: "At least five (5) calendar days prior to the effective date of any punitive action against an employee with permanent civil service status, the appointing power...shall give the employee written notice of the proposed action, the reasons for such action, a copy of the charges and material upon which the action is based and the right to respond either verbally or in writing, to the authority ... prior to its [the action] effective date."

thus, appellant apparently is asserting that it was deliberately deleted as a cause in the first amended notice, thereby depriving her of knowledge that it would thereafter be considered as cause for dismissal.

To accept appellant's argument is to scale the heights of rigid technicality. The obvious purpose of the first amended notice was to change the effective date of dismissal from September 23, 1977, to September 30, 1977. The fact that the first amended notice contained no specific acts or omissions in support of the charges is evidence that its *sole* purpose was to change the date of dismissal. Viewed in this light, the omission of insubordination from the list of causes for dismissal is a meaningless oversight. The initial notice appellant received on September 14, 1977 charging insubordination as a ground for dismissal was not erased by the first amended notice.

Appellant fares no better with her claim that the second amended notice added new charges. The stated purpose of the continuance to amend the notice of dismissal was to correct a technical pleading defect by amending the notice to state as *charges* those items erroneously listed in the original notice as *subjects* of corrective interviews. The second amendment to the notice of dismissal did exactly this and no more. No new acts or conduct on the part of appellant were alleged.

"What *Skelly* requires is unambiguous warning that matters have come to a head, coupled with an explicit notice to the employee that he or she now has the opportunity to engage the issue and present the reasons opposing such a disposition." (*Coleman* v. *Regents of University of California* (1979) 93 Cal.App.3d 521, 525-526 [155 Cal.Rptr. 589].) Appellant received a clear and concise warning on September 14, 1977. As of that date, she knew that the items listed as subjects of corrective interviews were among the reasons matters had come to a head. Moreover, contrary to appellant's claim, common sense and self-interest would logically impel her to address the incidents which triggered the corrective interviews whether or not they were stated as charges against her. Evidence that those incidents occurred and that appellant was counseled not to engage further in such behavior would lend support to an inference of a continuing course of harmful conduct which would justify the severe penalty of dismissal. Thus, no purpose would be served in granting appellant a new opportunity to respond after service of the second amended notice on March 3, 1978. Accordingly, we hold that because appellant was not entitled to a second opportunity to re-

spond directly to the Department on the same subject matter as to which she had previously responded, she suffered no denial of due process of law.

## II

Appellant asserts that it was a prejudicial abuse of discretion for the hearing officer to grant respondent's motion[5] to amend the effective date of dismissal set forth in the second amended notice of dismissal from March 10, 1978, to September 30, 1977. On the record before us we cannot agree.

As discussed above, the purpose of the second amended notice of dismissal was to correct a technical pleading defect. It is apparent from the surrounding circumstances that the insertion of March 10, 1978, as the effective date of dismissal resulted from a clerical error.

As appellant was not entitled to an additional opportunity to respond directly to the Department as to the same charges to which she previously had been accorded an opportunity to respond, before discipline was imposed, she lost nothing by the amendment. There is nothing in the record to indicate that appellant was misled, prejudiced or damaged in any manner as a result either of the pleading defect or of the amendment correcting same.

## III

Appellant argues that the Board's findings are inadequate to support its decision that she was insubordinate or that she treated her fellow employees discourteously within the meaning of Government Code section 19572, subdivisions (e) and (m), and further contends that the decision was not supported by substantial evidence. In our view this argument lacks merit.

It is appellant's position that there is neither evidence nor findings as to any specific order given to her by a superior. Further, that neither the record nor the findings establish by substantial evidence that appellant's conduct was intentional and wilful. Appellant relies upon *Parrish*

[5]Respondents' motion was made at the close of the administrative hearing on May 19, 1978, and the matter submitted for ruling concurrent with the decision.

v. *Civil Service Commission* (1967) 66 Cal.2d 260, 264 [57 Cal.Rptr. 623, 425 P.2d 223] for the principle that insubordination can rightfully be predicated only upon a refusal to obey some order which a supervising officer is entitled to give and entitled to have obeyed. Additionally, *Coomes* v. *State Personnel Board* (1963) 215 Cal.App.2d 770, 775 [30 Cal.Rptr. 639] requires that insubordination be founded upon proof of intentional or wilful conduct.

However, appellant's construction of the word "order" is too technical and narrow. The hearing officer stated in finding V, *supra*, that *all* employees had been instructed that they were to complete serving any customer they had started to serve prior to the normal closing time of the office. This instruction constituted an order to employees entitled to leave at closing time (such as appellant) not to do so until any customer service which had been initiated was completed. Without question, this is the type of order which any supervising officer is entitled to give and have obeyed. Finding V further states that appellant had begun to serve a customer prior to closing time on July 15, 1977. At closing time, she was informed no relief was then available. Nevertheless, appellant closed her window and left the customer to wait until a coworker was free. Such conduct was intentional and wilful disobedience of the order to complete customer service.

Finding VI, *supra*, further supports the charge of insubordination. In finding VI, the hearing officer stated that on July 26, 1977, appellant's supervisor approached her at her window to discuss a transaction which appellant had mishandled, a common practice in the local office. Implicit in this statement is a supervisor's right to instruct an employee as to the manner in which a transaction has been mishandled and the proper method of proceeding. Such instruction is analogous to an order which a supervisor has a right to give and have obeyed. Finding VI further states that appellant refused to discuss the transaction with her supervisor. Appellant's refusal to take instruction amounts to refusal to receive an order. Such a refusal rises to the level of disobedience.

Appellant asserts that only finding IV, *supra*, which relates that appellant called "tattle tale, tattle tale" to a fellow employee who reported appellant's rudeness to a customer and twice called the fellow employee a bitch, might support a determination that appellant was discourteous to other employees. Clearly, such conduct was egregiously discourteous. However, appellant ignores the clear implications of finding VI. Her re-

fusal to take instruction properly proffered by her supervisor was not only insubordinate but also discourteous. We hold that findings IV, V and VI strongly support the determination that appellant's conduct constituted insubordination and discourteous treatment of other employees.

■ With reference to appellant's further contention that assuming arguendo that the Board's findings of fact are adequate to support a determination that she was insubordinate and discourteous to fellow employees, the findings nonetheless are not supported by sufficient evidence, on the record before us we cannot address this argument.

Appellant's brief sets out as fact significant portions of testimony purportedly received at the administrative hearing. She rests her contention that the evidence is insufficient to support the findings on these facts. However, appellant has failed to provide this court with an evidentiary record and a reviewing court must accept and is bound by the record before it. (*Weller* v. *Chavarria* (1965) 233 Cal.App.2d 234, 246 [43 Cal.Rptr. 364].) Where a matter of overriding public concern is at issue, a summary of testimony in the brief of a party may be used by the court in making a decision. (*Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 367 fn. 4 [90 Cal.Rptr. 592, 475 P.2d 864].) The instant case does not involve such an issue. Therefore, we must disregard statements of fact in the briefs of the parties where they are not supported by the record. (*Loving & Evans* v. *Blick* (1949) 33 Cal.2d 603, 615 [204 P.2d 23]; *Babcock* v. *Houston* (1973) 33 Cal.App.3d 858, 864 [109 Cal.Rptr. 454]; *Estate of Kretschmer* (1965) 232 Cal. App.2d 789, 791 [43 Cal.Rptr. 121].)

Accordingly, in the absence of an evidentiary record, sufficiency of the evidence is not an issue open to question. Rather, we must presume that the findings were supported by substantial evidence. (*Smith* v. *Regents of University of California* (1976) 58 Cal.App.3d 397, 405 [130 Cal.Rptr. 118]; *Estate of Kretschmer, supra,* 232 Cal.App.2d 789, 791.) In any case, if we were to accept the appellant's statement of the facts, the result would be no different. Viewing those facts in the light most favorable to the judgment, as required on appellate review (*Campbell* v. *Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 538 P.2d 121]), there would be no apparent merit to appellant's contention that the Board's findings are not supported by substantial evidence.

## IV

Appellant finally contends that the penalty of dismissal is so disproportionate to any wrong supported by the evidence as to constitute an abuse of discretion. We cannot agree.

■ Notwithstanding the principle enunciated in *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1965) 62 Cal.2d 589, 594 [43 Cal.Rptr. 633, 400 P.2d 745]), that an administrative body does not have absolute and unlimited power, but rather is bound to exercise legal discretion, an appellate court is no more free than a trial court to substitute its discretion for that of the administrative agency as to the degree of punishment imposed. (*Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 404 [134 Cal.Rptr. 206, 556 P.2d 306]; *Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507, 515 [102 Cal.Rptr. 758, 498 P.2d 1006]) In cases of public employee discipline, whether an abuse of discretion occurred is tested by "the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[h]arm to the public service' . . ., the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, 218; see also *Blake* v. *State Personnel Board* (1972) 25 Cal.App.3d 541, 550-551, 554 [102 Cal.Rptr. 50].)

■ The following facts support imposition of the maximum penalty of dismissal. In the space of less than one month, appellant engaged in four instances of conduct each of which merited discipline. On two separate occasions, she was insubordinate, refusing to follow orders or to take instruction from her supervisor in appropriate circumstances. On one of these occasions, appellant's insubordination resulted in a disruption of service to the public. Further, on the other occasion, appellant's insubordination resulted in a failure to improve service to the public.

Appellant also treated two other employees discourteously, each on a separate occasion. One of these employees was her supervisor who was attempting to instruct appellant in the proper method of handling a transaction. On the other occasion, appellant publicly insulted a fellow employee, calling her a tattletale and bitch.

Unquestionably, these incidents harmed the public service. Walking away from a customer and refusing instruction in proper public service are obvious examples of harm. Discourtesy to a supervisor generally injures the supervisor-employee relationship and is thus harmful to the

public service. Cooperation among public employees is essential to the smooth functioning of public service. Such egregious conduct as publicly insulting a fellow employee not only destroys cooperation among employees, but also destroys public confidence in governmental service.

Moreover, the closeness in time of these incidents reveals a continuing course of conduct which is likely to recur. Repeated occurrence of similar incidents would increase the level of harm to public service. That each incident occurred while appellant was at her station engaged in public service constitutes a final aggravating circumstance. In addition, appellant exhibited a past disregard for public service as evidenced by the official reprimand she received for inexcusable neglect of duty and inexcusable absence without leave. Given the totality of circumstances, we find no abuse of discretion.

The judgment is affirmed.

Hanson (Thaxton), J., and Roberson, J.,* concurred.

A petition for a rehearing was denied December 19, 1980, and appellant's petition for a hearing by the Supreme Court was denied January 28, 1981.

---

*Assigned by the Chairperson of the Judicial Council.