[Civ. Nos. 44286, 44287. First Dist., Div. Two. Apr. 1, 1980.]

HAROLD A. ALEXANDER, as Executor, etc., et al.,
Plaintiffs and Respondents, v.
ABBEY OF THE CHIMES, Defendant;
SAMUEL SCOTT McCORMAC, Objector and Appellant.

**COUNSEL**

Ned R. Nelsen for Objector and Appellant.

Casper & Harrison, Kenneth K. Casper, Taft, Taft & Brown and Franklin R. Taft for Plaintiffs and Respondents.

**OPINION**

**MILLER, J.**—This appeal is from orders amending judgments in two cases to impose personal liability upon appellant Samuel Scott McCormac, a person not named in the original complaints nor in the judgments which were entered seven years previously against Abbey of the Chimes (hereafter Abbey), a corporation of which appellant was, for a period of time, the sole stockholder.

The two original proceedings commenced on October 21, 1966, and sought recovery against Abbey, a California corporation, on a promis-

sory note executed by the corporation and on an assignment of commissions alleged to be owing for the sale of cemetery plots. Both obligations were incurred by Abbey prior to the time that appellant became a stockholder in the corporation.

Appellant became the sole stockholder of Abbey on or about May 15, 1965, and remained so until January 20, 1969, at which time Abbey sold all of its assets and property to Skylawn, another California corporation. This transaction was formalized in a written agreement which provided that Abbey deliver to Skylawn "such deeds, bills of sale, assignments and other instruments of transfer as may be necessary to vest in Skylawn good and marketable title to the property and assets sold." Skylawn agreed to deliver to appellant its promissory notes totalling more than $600,000. The agreement specifically made reference to the pending litigation and required Skylawn to assume the liability to pay any judgments entered in the litigation. Additionally, paragraph 2 of the agreement provided that Abbey would deliver a signed notice of bulk sale and transfer of assets, together with affidavit of publication conforming to the provisions of section 6107 of the California Uniform Commercial Code. The provisions of this portion of the agreement were fully carried out and publication made in accordance with the law.

On February 8, 1971, judgments were entered against Abbey, the sole defendant in the pending actions.

There is no indication in the record that respondents made an attempt to satisfy their judgments through Abbey or Skylawn. However, on December 6, 1977, respondents moved the lower court for an order to amend the judgments to add appellant as a named defendant on the ground that he "was the alter ego of Defendant, Abbey of the Chimes, and that the Judgment as rendered contains a misnomer in failing to include the name of Samuel Scott McCormac as Judgment Debtor."

Appellant's declaration in opposition to the motion conceded that he had been the sole stockholder of Abbey from about May 15, 1965, to January 20, 1969, but denied that the corporation had been used as his alter ego or that it had been operated for his personal benefit other than for such benefits as normally accrue to a stockholder. He further denied being present at the trial of the proceedings.

At the hearing on the motion, the attorney that represented Abbey at the original trial stated that he had discussed the subject matter of the litigation with appellant as one lawyer to another. At first he was uncertain as to whether appellant was present at the trial but later conceded that he was not present.[1]

When the hearing on the motion first commenced, the court indicated that it would grant a continuance for a "full-blown" hearing, if appellant requested one. No continuance was requested and appellant's attorney stated: "Your Honor, I will submit the matter without requesting a continuance for a hearing based upon a matter of law of the Supreme Court case and the declarations which have been submitted by Mr. McCormac in opposition to Mr. Casper's [respondents' attorney] declarations."

■ Appellant's principal contention on appeal is that a judgment may not be entered against a person who is not a party to an action. He primarily relies on *Motores de Mexicali v. Superior Court* (1958) 51 Cal.2d 172 [331 P.2d 1] for the proposition that the 14th Amendment of the United States Constitution guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to present his defenses and to amend a judgment to include an unnamed defendant would constitute a denial of due process.

Section 187 of the Code of Civil Procedure[2] grants to every court the power to use all necessary means to carry its jurisdiction into effect, even if those means are not specifically pointed out in the code. (*Fairfield v. Superior Court* (1966) 246 Cal.App.2d 113, 120 [54 Cal.Rptr. 721].)

In *Mirabito v. San Francisco Dairy Co.* (1935) 8 Cal.App.2d 54 [47 P.2d 530], the trial court amended its judgment to include an entity

---

[1] At one point the trial judge stated that he [the judge] could recall that appellant was a witness in the trial against Abbey. The trial judge then asked several questions of Abbey's trial attorney for the purpose of clearing up the matter. It was then determined that appellant had testified in an unrelated quiet title action.

[2] Section 187 of the Code of Civil Procedure provides: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

which was never a party to the original action. In affirming the amended judgment, the reviewing court stated that a court may amend its judgment at any time so that the judgment will properly designate the real defendants. (*Id.*, at p. 57.) The court reasoned that "[w]here . . . the evidence is sufficient to warrant the conclusion that in effect the two corporations are identical; where . . . the action was fully and fairly tried with at least the direct financial assistance of [the alter ego]; and where . . . nothing appears in the record to show that [the alter ego] could have produced a scintilla of evidence that would have in any way affected the results of the trial, there is no basis for a different rule." (*Id.*, at p. 60.)

In *Thomson* v. *L. C. Roney & Co.* (1952) 112 Cal.App.2d 420 [246 P.2d 1017], the plaintiff obtained a final judgment against a corporation. The alter ego relationship with another entity was not discovered until two years later. At a hearing to amend the judgment to include the alter ego, evidence was produced reflecting additional alter ego factors. The action of the trial court in amending the judgment to include the other entity was affirmed on appeal on the basis of section 187 of the Code of Civil Procedure and *Mirabito* v. *San Francisco Dairy Co., supra.*

In *Motores de Mexicali* v. *Superior Court, supra,* our Supreme Court discussed the factual distinctions between those cases where final judgments may be properly amended to include unnamed defendants and those cases where such amendment is prohibited. The court distinguished *Mirabito* and *Thomson* from *Motores* on the basis that in both *Mirabito* and *Thomson* the alter egos had subsidized the defense of the named defendants and had been effectively present throughout the litigation, whereas in *Motores* the individuals whose names had been added to the final judgment had in no way participated in the defense of the basic action against the defendant. The court concluded that to add individuals to a judgment without allowing them to litigate any questions beyond their relations to the allegedly alter ego corporation would patently violate constitutional safeguards.

Thus, it is now settled that " . . . the authority of the court will be exercised to impose liability under a judgment upon the *alter ego* who has had control of the litigation." (*Schoenberg* v. *Romike Properties* (1967) 251 Cal.App.2d 154, 168 [59 Cal.Rptr. 359]; see also, *Marcus* v. *Superior Court* (1977) 75 Cal.App.3d 204, 211, fn. 3 [141 Cal.Rptr. 890];

1A Ballantine & Sterling, Cal. Corporation Laws (4th ed. 1978) § 299.04, pp. 14-42—14-43.)

In the instant action, there was sufficient evidence that appellant had controlled the litigation between respondents and Abbey. The attorney that represented Abbey at the original trial testified that he primarily dealt during the litigation with appellant; that appellant was kept fully advised of what was occurring in the lawsuits and in the process of the lawsuits; that appellant was also an attorney and his discussions with appellant were on a lawyer-to-lawyer basis; that appellant was completely familiar with all of the issues that were going to be tried and prepared documents that were used in the litigation; that hearings were continued and reset at times convenient to appellant; and that appellant participated in the litigation both as chief operating officer and as a lawyer. It is precisely this type of involvement and control by an alter ego which distinguishes this case from those cited by appellant where amendment of the judgments were prohibited. Appellant's involvement in the litigation below was at least equal to the involvement of those alter egos in *Mirabito* and *Thomson*. Such involvement satisfies the elements of a fair trial as required by due process of law.

Therefore, we hold that this was a proper case for amendment of the judgment.

██ Appellant next contends that the evidence does not establish grounds for disregarding the corporate entity. He argues that neither the declarations submitted by the parties nor the testimony received at the hearing provide grounds for charging appellant with personal liability for the obligations incurred by Abbey.

██ It is well established that the conditions under which the corporate entity may be disregarded vary according to the circumstances in each case and the matter is particularly within the province of the trial court. (*Associated Vendors, Inc.* v. *Oakland Meat Co.* (1962) 210 Cal. App.2d 825, 836-837 [26 Cal.Rptr. 806]; *Goldsmith* v. *Tub-O-Wash* (1962) 199 Cal.App.2d 132, 140 [18 Cal.Rptr. 446].) This is because the determination of whether a corporation is an alter ego of an individual is ordinarily a question of fact. (*Babcock* v. *Houston* (1973) 33 Cal. App.3d 858, 864 [109 Cal.Rptr. 454].)

██ Generally speaking, there are two requirements for disregarding the corporate entity: "...(1) that there be such unity of interest and

ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." (*Automotriz etc. De California v. Resnick* (1957) 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042].) Both of these requirements must be found to exist before the corporate existence will be disregarded, and since this determination is primarily one for the trial court and is not a question of law, the conclusion of the trier of fact will not be disturbed if it is supported by substantial evidence. (*Arnold v. Browne* (1972) 27 Cal. App.3d 386, 394 [103 Cal.Rptr. 775], overruled on other grounds, *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124 [158 Cal.Rptr. 1, 599 P.2d 83].)

■ At the hearing below the court offered, but appellant refused, to have a "full-blown" hearing on the issue of applicability of the alter ego doctrine. Nevertheless, sufficient evidence was presented to rule on the question. Appellant admitted that he was the sole stockholder and chief executive officer of Abbey from May 15, 1965, until January 20, 1969. On January 10, 1969, while litigation was pending, Abbey entered into an agreement to sell all of its assets to Skylawn. Paragraph 1 of the agreement provided that essentially all of the assets, both tangible and intangible, would be sold. Paragraphs 3B(1) and 3C(1) reflect that the consideration was two promissory notes to be executed by the buyer and directly payable to appellant, rather than to Abbey. The net effect of the transaction was to leave Abbey as a hollow shell without means to satisfy its existing and potential creditors. This evidence alone was more than sufficient for the trier to find both unity of interest and ownership as well as an inequitable result if the alter ego doctrine is not applied.

■ Despite the foregoing, we conclude that the judgment must be reversed due to the fact that the motion to amend the judgment was not timely made.

■ It has long been settled that the decision to permit amendment of a complaint and service of a fictitious defendant rests in the sound discretion of the trial court. (*Simon v. City & County of San Francisco* (1947) 79 Cal.App.2d 590, 600 [180 P.2d 393].) However, under special circumstances it may be found that the trial court abused its discretion in allowing amendment. (*McIntire v. Superior Court* (1975) 52 Cal.App.3d 717, 720 [125 Cal.Rptr. 379].)

■ "[T]o justify the addition of new defendants, plaintiff must have acted with due diligence to bring them in as parties." (*McIntire v. Superior Court, supra*, at p. 721.) Here, there is no explanation in the record for the close to seven-year delay in filing ·the subject motion. There is no suggestion that respondents have ever made any effort to satisfy the judgment until this motion was filed. There is likewise no suggestion that respondents were unaware of appellant's connection with Abbey at the time of the filing of the complaints or at ·the time of trial.

■ When considering the application of the alter ego doctrine to a particular situation, it must be remembered that it is an equitable doctrine and, though courts have justified its application through consideration of many factors, their basic motivation is to assure a just and equitable result. (1A Ballantine & Sterling, Cal. Corporation Laws (4th ed.) § 295, p. 14-32.)

■ "Equitable relief from a judgment may be refused to a party thereto if [¶] (a) before or after the judgment was rendered the complainant or a person representing him failed to use care to protect his interests, or [¶] (b) after ascertaining the facts the complainant failed promptly to seek redress." (Rest., Judgments, § 129.) In its comment on clause (b), the Restatement states: "In determining whether the delay by the complainant in seeking relief has been unreasonable, many circumstances are to be considered. Although length of time in itself, aside from its likelihood of producing hardship, is not a bar, nevertheless the length of time which has elapsed from the time when the complainant knew or should have known of the facts...is an important element where no reason is suggested for the delay." ■ In the instant action, respondents waited nearly seven years after judgment was final to seek to include an unnamed defendant, the alter ego of the corporation against which they had received judgment. Unlike the situation in *Thomson v. L. C. Roney & Co., supra*, where the alter ego relationship with another entity was not discovered until two years after litigation, respondents knew or should have known that appellant was the alter ego of Abbey either at the time of the original proceedings or shortly thereafter. ■ "[E]quitable relief will not ordinarily be granted merely because the representative of a party, whether counsel, trustee or agent in charge of an action, has negligently failed to avail himself of facts which he should have known." (Rest., Judgments, § 129, com. on cl. (a).) Accordingly, we find that in the absence of any reasonable explanation for nearly a seven-year delay in moving for amendment, the

trial court abused its discretion in granting this belated motion for amendment of the judgment.

The orders are reversed.

Taylor, P. J., and Rouse, J., concurred.