[No. D009198. Fourth Dist., Div. One. July 27, 1989.]

UKEGAWA BROTHERS, Petitioner, v.
AGRICULTURAL LABOR RELATIONS BOARD, Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO, Real Party
in Interest.

---

---

COUNSEL

William N. Sauer, Littler, Mendelson, Fastiff & Tichy and Scott A. Wilson for Petitioner.

Bernard L. Allamano, Kevin S. Robinson and Michael D. Stump for Respondent.

Lyons, Macri-Ortiz, Schneider, Dunphy & Camacho and Dianna Lyons for Real Party in Interest.

---

OPINION

**WIENER, Acting P. J.**—The petition for review filed by Ukegawa Brothers has been reviewed and considered by Justices Wiener, Todd and Huffman. The petition is denied. (See *Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335 [156 Cal.Rptr. 1, 595 P.2d 579].)

In 1988 the Agricultural Labor Relations Board (ALRB or Board) corrected what it called a clerical error in an order issued in 1982 against Ukegawa Brothers, Inc. Through the correction the Board replaced Ukegawa Brothers, Inc. with Ukegawa Brothers, a general partnership, as the party against whom the order lay. The partnership has filed a petition for a writ of review contending the error was not clerical and that through the correction, it was denied the opportunity to seek review of the 1982 order.

Commencing in 1975, the United Farm Workers filed a number of unfair labor practice charges against Ukegawa Brothers, a tomato farmer in northern San Diego County. In November 1977 ALRB issued a complaint against Ukegawa Brothers, Inc. The Ukegawa Brothers partnership answered, advising the Board it had erroneously identified the partnership as a corporation. An unfair labor practice trial commenced and while it proceeded, Ukegawa Brothers reorganized as a closed corporation. The same

counsel represented both the partnership and corporation in the unfair labor practice hearing and numerous appearances since. Neither the partnership nor the corporation mentioned the change of form of the Ukegawa Brothers between the outset of the unfair labor practice hearing and an ALRB effort to enforce its order in court 10 years later.

In the interim, in December 1982 the Board issued a decision ordering Ukegawa Brothers, Inc. to, among other things, reinstate and make whole farmworkers the Board had determined the partnership had discriminatorily discharged. (*Ukegawa Brothers* (1982) 8 ALRB No. 90.) In the decision, the Ukegawa Brothers were identified as a partnership but the order was against Ukegawa Brothers, Inc. Following the corporation's petition for a writ of review (Lab. Code, § 1160.8) this court summarily denied the petition and the Supreme Court denied hearing.

In 1987 the ALRB sought to enforce against the partnership in the San Diego County Superior Court the reinstatement provisions of its 1982 order. At that time the partnership notified the Board through its answer that the order was against the corporation, not the partnership. When in 1988 the ALRB general counsel's office commenced its compliance procedure against Ukegawa, it filed a motion to correct the error. The Board issued an order to show cause and ultimately corrected the error nunc pro tunc in November 1988. (*Ukegawa Brothers, supra,* 14 ALRB No. 15 at p. 2). In December 1988 the Ukegawa Brothers partnership filed a petition for a writ of review.

DISCUSSION

*Clerical or Judicial Error?*

 In discussing the nature of the error corrected, both the partnership and the Board rely upon *In re Candelario* (1970) 3 Cal.3d 702 [91 Cal.Rptr. 497, 477 P.2d 729]. Candelario filed a petition for a writ of habeas corpus after the trial court amended judgment to add a prior conviction following sentencing. In 1964 Candelario was convicted of selling heroin. The information also charged, and Candelario admitted, he had been convicted in 1953 of possessing marijuana. In the initial judgment the court imposed a prison term for selling heroin but did not refer to the marijuana conviction. Without the prior conviction, Candelario was eligible for parole in three years. With the prior, he was not eligible for 10 years. The court noted:

"It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. . . . [Citations.]

"Clerical error, however, is to be distinguished from judicial error which cannot be corrected by amendment. The distinction between clerical error and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered.' (46 Am.Jur.2d. Judgments, § 202.) Any attempt by a court, under the guise of correcting clerical error, to 'revise its deliberately exercised judicial discretion' is not permitted." (*In re Candelario, supra,* 3 Cal.3d at p. 705, quoting *In re Wimbs* (1966) 65 Cal.2d 490, 498 [55 Cal.Rptr. 222, 421 P.2d 70].) The court concluded the error corrected was a judicial rather than a clerical error because the trial court had discretion to omit the prior conviction as an act of leniency. (*Id.* at p. 706.)

Here, it is not disputed the amendment substantially modified the original order and materially altered the rights of the parties. The question is whether the error was the result of the exercise of judicial discretion.

In arguing it was, the partnership notes the Board was well aware of the existence of both entities when it entered the initial order. In making the argument it notes the underlying unfair labor practices occurred in 1975 and 1976 and the corporation did not come into existence until 1978. This argument is not disputed. However, the partnership next asserts the Board purposefully chose to name only the corporation. That is at issue here. If the Board purposefully chose to name only the corporation in 1982 and changed its mind in 1988, it exercised judicial discretion in 1988. However, if it intended in 1982 to remedy the 1975 and 1976 unfair labor practices in full, it intended to include within its order all parties responsible for those practices, in which case the 1988 correction was of clerical error.

Quoting *In re Candelario, supra,* 3 Cal.3d at p. 705, the partnership points out, "An amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error, therefore, unless the record clearly demonstrates that the error was not the result of the exercise of judicial discretion. [Citations.]" Here, "the record clearly demonstrates that the error was not the result of the exercise of judicial discretion." Throughout the 1982 opinion, the Board refers to Ukegawa Brothers as the respondent. On the first page of the opinion the Board notes, "Respondent Ukegawa Brothers is a four person partnership comprised of Hiroshi and Joe Ukegawa, brothers, and their respective wives." (*Ukegawa Brothers, supra,* 8 ALRB 90 at p. 1.) The Board then proceeds to discuss at length respondent's (the partnership's) acts and concludes: ". . . Respondent violated Labor Code sections 1153(c) and (a) of the Act: by its discharge of Francisca Roman on September 23, 1975; by its mass layoff of the 23-

member Armenta tomato harvest crew in January 1976; and by its subsequent refusal to rehire former Tijuana workers during the 1976 season because of their support for the UFW.

"Accordingly, our Order herein will provide appropriate remedies for each of the violations described above." (*Id*. at p. 65, fn. omitted.) While discussing remedy for the unlawful acts, the Board repeatedly states it is ordering "respondent" to take action. In the decision the Board says it is ordering "respondent" to reinstate and make whole "employees Juan Rubalcava, Elias Montoya, Francisco Carrillo and Jose Perez Serrano for all losses of pay and other economic losses they have suffered as a result of their unlawful demotion and/or transfer during the 1975 season. We note that respondent's backpay liability to Rubalcava ceased on December 29, 1975, the date on which he was discharged for cause." (*Id*. at p. 66.)

In discussing a broad cease and desist order, the Board said: "Respondent excepts to the ALO's recommendation of a broad cease-and-desist order, contending that such an order is punitive in nature where, as here, there is no prior history of unfair labor practices. The exception lacks merit. In *M. Caratan, Inc*. (March 12, 1980) 6 ALRB No. 14, we held that the broad cease-and-desist order is warranted in two specific circumstances: where a respondent has been found to have repeatedly engaged in violations of the Act, i.e., has demonstrated a proclivity to thwart its statutory obligations, or where a respondent has engaged in widespread acts and conduct of such an egregious nature that it thereby demonstrates to employees a general disregard for their rights under the Act. We are persuaded by the number of violations found herein, the long period of time during which such misconduct occurred, and particularly the number of employees affected by such conduct, that this is the type of case of egregious and widespread misconduct for which the broad cease-and-desist order was intended." (*Id*. at p. 68.)

In making these statements the Board was referring to the partnership, since it identified respondent as the partnership in the opinion and the acts discussed by the Board occurred before the corporation was in existence. However, when the Board ordered the corporation to take actions to remedy the wrong, rather than the partnership, it repeatedly ordered the corporation to remedy wrongs perpetrated by the partnership. For example, in ordering backpay to employees who had lost income through the partnership's acts, the Board ordered the corporation; "Offer to Francisca Roman, who was discharged on September 23, 1975, and to the members of the Armenta tomato-harvest crew who were laid off on January 19, and 21, 1976, and whose names appear in the attached Appendix A, and to the

employees who were discriminatory refused rehire in 1976, and whose names appear in the attached Appendix B and Appendix C, immediate and full reinstatement to their former or substantially equivalent position(s), without prejudice to their seniority or other rights or privileges.

"(b) Make whole Francisca Roman and all employees whose names appear in Appendices A, B, and C, attached hereto, for all wage losses and other economic losses they have suffered during the period from the date of their termination, or Respondent's failure or refusal to rehire them, to the date on which Respondent offers them full reinstatement, together with interest on said sum computed in accordance with our Decision and Order in *Lu-Ette Farms, Inc.* (Aug. 18, 1982) 8 ALRB No. 55. Backpay shall be computed in accordance with established Board precedents and shall begin: from their respective dates of termination for Francisca Roman and the members of the Armenta crew who are listed in Appendix A; from the respective dates on which they were discriminatorily refused rehire for the workers listed on Appendix B; and from respective dates on which each of the workers listed in Appendix C would have been employed by Respondent absent its discriminatory hiring practices." (6 ALRB at pp. 71-72.)

In ordering the corporation to make whole raiteros who were discriminated against in 1976 (drivers from Tijuana to the fields in northern San Diego County), the Board ordered the corporation to: "(c) Reimburse the workers designated as raiteros in Appendix A for all losses of wages and other economic losses they incurred as a result of their discharge by Respondent and their resultant inability to continue transporting other workers to and from the work site, plus interest on such amounts computed in accordance with our Decision and Order in *Lu-Ette Farms, Inc., supra*, 8 ALRB No. 55." (6 ALRB at p. 72.)

It is clear from this opinion the Board intended to order the partnership to make the employees whole. The Board's order that the corporation do so was clearly inadvertent error and could be corrected as a clerical error.

In arguing the Board intended to order the corporation, not the partnership, to remedy the wrong, the partnership speculates the Board may have named the corporation rather than the partnership in an effort to avoid having to prove the corporation was a successor employer of the partnership, and therefore responsible for the partnership's unfair labor practices. Given the facts before the Board, the speculation is unreasonable. The entity which commits an unfair labor practice is liable for its consequences even if the entity has changed form subsequent to commission of the unfair labor practice (*Golden State Bottling Co.* v. *NLRB* (1973) 414

U.S. 168, 186-187 [38 L.Ed.2d 388, 404, 94 S.Ct. 414]; *Highland Ranch and San Clemente Ranch, Ltd.* (1979) 5 ALRB 54, 18). A successor employer is liable for the unfair labor practices of its predecessor when " 'the agricultural operation itself remained almost identical' " where the same land is farmed, the same equipment used and the crops produced in essentially the same manner. *(San Clemente Ranch Ltd.* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 874, 891 [176 Cal.Rptr. 768, 633 P.2d 964].) Since no change in the operations of the Ukegawa Brothers' business has even been alleged to have resulted from the change in the form of its owners, speculation the ALRB gave away substantial backpay owed to farmworkers in order to avoid a hearing on successorship is irrational and requires a finding the Board abused its discretion. We do not accept the speculation. Whether the corporation is responsible for the unfair labor practices of the partnership as a successor employer is an issue which may be decided at the backpay hearing.

Relying upon cases reflecting the view expressed in *Estate of Eckstrom* (1960) 54 Cal.2d 540 [7 Cal.Rptr. 124, 354 P.2d 652], the partnership argues the present Board cannot correct the error since the composition of the Board has changed since the error was made. The partnership argues only the judge who issued the initial order can determine whether the error was clerical. However, this argument has merit only if the error is not apparent from the face of the record. Where, as here, throughout the Board's 1982 opinion it refers to the partnership as the party which committed the unlawful practices and the corporation did not exist when the practices were committed, it is clear from the record the partnership, not the corporation, was intended to be the party ordered to remedy the wrong inflicted upon the employees. No authority supports the argument a clerical error clear from the record cannot be corrected by the changed Board.

▆▆▆ Extracting one sentence, "[t]he ascertainment of whether an error had been committed . . . requires the determination of a fact from evidence that may be conflicting," from *Estate of Hultin* (1947) 29 Cal.2d 825, 830 [178 P.2d 756], the partnership argues the Board erred in correcting the clerical error without holding an evidentiary hearing. However, that the error here was clerical appears from a fair reading of the face of the record. In *Hultin,* in addition to the sentence upon which the partnership relies, the court also said, "It has been held repeatedly that an order correcting a clerical error in the record of a judgment may be made by the court *ex parte without notice* and on the court's own motion. [Citations.] The above cases cited may be classified as follows: (1) Where a clerical error appears *on the face of the record*. [Citations.]" *(Id.* at pp. 829, italics in original.) There is

thus no duty to hold an evidentiary hearing where the clerical nature of an error appears on the face of the record.

Relying primarily upon *Alexander* v. *Abbey of the Chimes* (1980) 104 Cal.App.3d 39 [163 Cal.Rptr. 377], the partnership argues the Board is precluded from correcting its error because of unreasonable delay in doing so. *Alexander* involved an effort to amend to add an alter ego to the judgment seven years after the original judgment. The court found the effort to amend untimely, noting nothing in the record explained the close to seven-year delay in filing the motion. Quoting the Restatement, Judgments, section 129 and the comment thereto, the court said: " 'Equitable relief from a judgment may be refused to a party thereto if [¶] (a) before or after the judgment was rendered the complainant or a person representing him failed to use care to protect his interests, or [¶] (b) after ascertaining the facts the complainant failed promptly to seek redress.' (Rest., Judgments, § 129.) In its comment on clause (b), the Restatement states: 'In determining whether the delay by the complainant in seeking relief has been unreasonable, many circumstances are to be considered. Although length of time in itself, aside from its likelihood of producing hardship, is not a bar, nevertheless the length of time which has elapsed from the time when the complainant knew or should have known of the facts . . . is an important element where no reason is suggested for the delay.' " (*Alexander* v. *Abbey of the Chimes, supra,* 104 Cal.App.3d at p. 48.) Here, the clerical error first came to the Board's attention in August 1987 when it sought to enforce the order in the Superior Court. It is not unreasonable delay to correct the error prior to the compliance hearing in 1988.

The error reflected in the 1982 opinion was clearly inadvertent and the Board did not err in correcting its clerical error.

*Due Process*

██ The partnership contends not being identified in the initial order it was precluded from seeking review and therefore would be denied due process of law if not permitted to obtain review of the 1982 order. When this court reviewed the 1982 order in 1985, it was not called to the court's attention that the order was against the corporation rather than the partnership although the petition for review had been filed by the corporation and the court was reviewing a multitude of unfair labor practice findings based on acts committed by the partnership, none by the corporation. In its opening brief in that case, the petitioner (the corporation) referred to itself as "Ukegawa." It noted "Ukegawa" had filed an answer to the unfair labor practice charges on November 17, 1977. The record reflects Ukegawa

Brothers, Inc. did not come into existence until March 1978. The corporation stated, "At the time the charges were filed, petitioner [Ukegawa Brothers, Inc.] was doing business as a four person partnership comprised of Hiroshi and Joe Ukegawa, brothers, and their respective wives." While discussing the unfair labor practice charges, it said, over the years its workforce has been obtained from "legals" and "illegals." For thirty pages, the Ukegawa corporation argued against the specifics of the Board's order. Throughout the argument it referred to the partnership and the corporation interchangeably.

A court may at any time amend a judgment to correctly name an alter ego of a party responsible for a wrong found at trial. (*Mirabito* v. *San Francisco Dairy Co.* (1935) 8 Cal.App.2d 54, 57 [47 P.2d 530]; *Farenbaugh & Son* v. *Belmont Construction, Inc.* (1987) 194 Cal.App.3d 1023, 1029 [240 Cal.Rptr. 78].) In discussing liability of the alter ego, the court in *Mirabito* said, "Separate corporate identity, however, is not always available as a defense. Where there is such a unity of interest and ownership that the separateness of the corporations has ceased and the facts are such that an adherence to the fiction of separate existence of the corporation would under the particular circumstances sanction a fraud or promote an injustice, separate identity will be disregarded. (*Minifie* v. *Rowley,* 187 Cal. 481, 487 [202 Pac. 673].) Thus it has been held that where a corporation was but the instrumentality through which an individual for convenience transacted his business, all of the authorities, not only equity but the law itself, would hold such a corporation bound as the owner of the corporation might be bound, or conversely, hold the owner bound by acts which bound his corporation. [Citations.] In the case of *Clark* v. *Millsap,* 197 Cal. 765, 782 [242 Pac. 918], the court states: 'The doctrine of corporate entity is not so sacred that a court of equity will hesitate to look through form to the substance of the thing and it may in proper cases ignore it to preserve the rights of persons imposed upon or circumvented by fraud. In such cases corporate fiction is disregarded.' That this rule is not limited to equity is clearly stated in *Llewellyn Iron Works* v. *Abbott Kinney Co., supra,* [172 Cal. 210, 155 P. 986] and the cases there cited. The rule has long been declared in California that where the facts warrant, courts may amend pleadings to correctly designate the parties actually involved, even though the statute of limitations has run in favor of the party substituted. [Citations.] The basis of the rule is, of course, that the court having acquired jurisdiction of the person of the defendant and of the subject of the action, it necessarily possessed the power to correct a misnomer. In the cases last mentioned, it is true, no judgment had been rendered at the time of the amendment. Where, however, as here, the Supreme Court has stated the evidence is sufficient to warrant the conclusion that in effect the two corporations are identical;

where, as here, the action was fully and fairly tried with at least the direct financial assistance of appellant; and where, as here, nothing appears in the record to show that Dairy Delivery Company could have produced a scintilla of evidence that would have in any way affected the results of the trial, there is no basis for a different rule. The trial court having acquired jurisdiction of San Francisco Dairy Company must likewise be held to have acquired jurisdiction of its *alter ego,* the appellant herein. To hold otherwise upon the facts herein would be to deny respondent the fruits of fairly contested litigation, place a premium upon acts and conduct which have misled a litigant, and frustrate the very purpose of our jurisprudence." (*Mirabito* v. *San Francisco Dairy Co., supra,* 8 Cal.App.2d at pp. 59-60.)

Here, the Board has not specifically found the partnership an alter ego of the corporation. One possible conclusion this court could now reach is to affirm the judgment insofar as it found the error to be clerical but to remand to the Board for determination of the alter ego issue. The court could note, if the Board finds the partnership an alter ego of the corporation, the judgment is affirmed in total. If the Board finds the partnership is not the alter ego of the corporation, the partnership is entitled to review of the evidence supporting the 1982 order.

Another possible conclusion is to reverse and let the Board determine the alter ego issue at the make-whole hearing if the corporation lacks resources to make the employees whole, since it is law of the case the corporation is responsible for doing so.

However, in light of the fact that the farmworkers involved here lost their jobs through the partnership's unlawful discrimination almost 15 years ago and have gone without the relief the Board, this court and the Supreme Court found them entitled to, we summarily deny the petition.

The record here clearly shows the partnership committed unfair labor practices, charges were mistakenly filed against a then nonexistent corporation, the corporation advised the Board of the error, the Ukegawa Brothers, either as a corporation or partnership participated in an almost year-long unfair labor practice hearing during which the partners changed to a corporation, the Board found the partnership committed numerous unfair labor practices but ordered the corporation to remedy the wrong caused by the partnership and the corporation sought review in this court and the Supreme Court without ever referring to a difference between it and the partnership and in fact refers to itself when discussing acts of the partnership. It is clear the corporation is the alter ego of the partnership and was not denied the opportunity to obtain review of the 1982 order. Nothing will

be gained by letting Ukegawa further delay relief to the farmworkers through this court denying relief on the basis that the Board has not explicitly stated the partnership and the corporation are the same entity.

The petition is denied.

Todd, J., and Huffman, J., concurred.